

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MARY A. KORNBAU,                    )
                                    )
      Plaintiff,                )
                                    )
v.                                  )        1:18-cv-1379 (CMH/IDD)
                                    )
NANCY A. BERRYHILL,                 )
Acting Commissioner of Social Security,  )
                                    )
      Defendant.                )
_____  )

### REPORT AND RECOMMENDATION

This matter is before the Court on the parties' cross-motions for summary judgment (ECF Nos. 13, 17). Pursuant to 42 U.S.C. § 405(g), Mary A. Kornbau ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423. For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Summary Judgment (ECF. No. 13) be **DENIED** and Defendant's Motion for Summary Judgment (ECF. No. 17) be **GRANTED**.

### I.     PROCEDURAL BACKGROUND

Plaintiff filed the application for DIB on June 28, 2014, alleging disability commencing on November 7, 2013. Administrative Record ("R.") 108. After Defendant denied Plaintiff's claim twice, Plaintiff requested an administrative hearing. R. 125, 130. The Administrative Law Judge ("ALJ") held a hearing on March 24, 2017. R. 16-72. On June 27, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. R. 107-119.

On June 27, 2017, the Appeals Council for the Office of Disability and Adjudication denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g). R. 105-07. Having exhausted her administrative remedies, Plaintiff filed the instant suit challenging the ALJ's decision on November 2, 2018. Compl., ECF No. 1. This matter is ripe for disposition because the parties filed cross-motions for summary judgment and waived oral argument.

## II.      FACTUAL BACKGROUND

Plaintiff, born on March 18, 1973, was forty-four years old at the time of the administrative hearing. R. 24. She has a law degree from Georgetown University, a Master's in public health from George Mason University, a certificate in epidemiology, and a Bachelor's degree in mathematics. R. 24-25. In September 2013, Plaintiff worked as a grocery store cashier and alleged disability beginning on November 2013. R. 25. Prior to September 2013, Plaintiff worked as a store representative for Wegmans and was a store clerk from June 2012 to January 2013. R. 25-26. From May 2012 to June 2012, Plaintiff worked as a sales clerk at a retail store. R. 27. From 1997 to 2009, Plaintiff worked at a patent law firm. R. 26. Plaintiff is not married and does not have any children. R. 29.

### A.      Medical Evidence

Plaintiff has a history of anorexia nervosa and has been frequently underweight. R. 575. Her body mass index has consistently been lower than 17.50. R. 408, 411, 414, 420, 428, 759-958, 994, 1156. Between December 2013 and May 2014, Plaintiff received treatment from the Digestive Disease Physicians ("DDP") for primarily irritable bowel syndrome ("IBS"). R. 407-21, 430-33. At this time, Xifan was helping her condition. R. 407.  In January 2014, a colonoscopy revealed benign results except for diffuse continuous melanosis. R. 425-26, 1168. A

magnetic resonance imaging ("MRI") of Plaintiff's small intestine was taken around the same time and it revealed unremarkable results. R. 419, 1168. Plaintiff had a small liver lesion, but all liver panels showed normal findings, a small right kidney cyst, and a stomach ulcer that resolved. R. 423, 432, 459-60, 681, 1149.

Since November 2013, Plaintiff's primary care physician, Gary Kaplan, D.O., has provided her with care for a variety of conditions, such as IBS, depression, anorexia nervosa, and chronic fatigue syndrome. R. 570-660. Doctor Kaplan's initial examination of Plaintiff's complaints of fatigue, brain fog, and IBS revealed normal findings. R. 574-75. He diagnosed her with anorexia nervosa, IBS, depression with anxiety, and chronic fatigue syndrome. R. 575. Throughout her visits with Dr. Kaplan from November 2013 to March 2015, he noted that Plaintiff appeared well nourished and that her mood and affect were appropriate. R. 574, 580, 585, 590, 599, 605, 611, 617, 623, 629, 635, 641, 647, 653, 658, 847, 853, 860, 867, 879, 888, 892, 904, 911, 917, 924. During this time, Dr. Kaplan referred Plaintiff to Martin Book, M.D. for psychiatric evaluation of her depression and anxiety. R. 575-76.

Doctor Book examined Plaintiff on five occasions: December 2013, May, June, and July of 2014, and February 2015. R. 1139-40. He indicated that Plaintiff continued to struggle with depression despite maintaining her medication regimen of Prozac and Diazepam. R. 1140. He added a low dose of Naltrexone to boost Plaintiff's energy. R. 1140. In July 2014, Dr. Kaplan confirmed that Plaintiff had Lyme disease and babesiosis. R. 719-20. Doctor Book opined that Plaintiff's physical and psychological impairments were "sufficiently severe as to interfere with her ability to carry out work related activities and deal with work pressures in a work setting." R. 1140. Doctor Book relied on observations of the Plaintiff from 2013 and 2014, specifically, that Plaintiff felt exhausted, depressed, had reported some gastrointestinal issues, and had stable

3

blood pressure. R. 1140. In the same opinion, Dr. Book noted that around February 2015, Plaintiff had ongoing complaints of depression and fatigue even though she was continuing to use Prozac and Diazepam, and that she had lost a bit of weight but had gained some back in the last weeks. R. 1140.

In May 2016, Dr. Book completed a Medical Assessment of Ability to Do Work-Related Mental Activities. R. 1142-44. He opined that Plaintiff has poor ability or no ability in every functional category due to chronic fatigue, brain fog, and cognitive impairment. R. 1142-44. He also opined that Plaintiff would miss more than three work days per month due to her impairments and/or treatment. R. 1144. On another assessment, Dr. Book noted that Plaintiff had a marked restriction of daily activities, difficulties in maintaining social functioning, and deficiencies in concentration, persistence, or pace resulting in frequent failures to complete tasks in a timely manner. R. 1146-47. He noted that she would miss more than three days of work per month due to her condition. R. 1146-47.

In 2016, William Furlong, M.D., also treated Plaintiff. R. 1184. He provided monthly treatment for Lyme disease and fatigue. R. 1184-87. In April 2016, he reported that Plaintiff had symptoms of fatigue, muscle weakness, brain fog, dizziness, neuropathy, and memory deficits. R. 1184. He opined that in an eight hour workday, Plaintiff could lift or carry less than five pounds, stand or walk less than two hours total and sit for two hours total, could not sit upright for six hours, had a pain level of seven to eight due to neuropathy, could not travel alone, would be absent more than three times per month, needed frequent additional rest breaks, and could not tolerate low stress jobs. R. 1184-87. He also noted that the brain fog and memory deficits may affect Plaintiff's ability to work or function normally in daily life. R. 1187.

In February 2017, Plaintiff visited DDP again. Plaintiff received treatment for her conditions, including gastritis. R. 1154-55. The gastritis was controlled by Pantoprazole. R. 1154-55. Plaintiff also suffered from chronic orthostatic hypotension, which was caused by her anorexia. R. 1154, 1168, 1176, 1229. Symptoms included headaches, decreased energy, cognitive impairment, and dizziness. R. 1168, 1176, 1229. In order to maintain her blood pressure, Plaintiff needed a high salt intake. R. 1170. Her symptoms improved after she started the salt implementation. R. 995, 1015, 1057.

## C.     State Agency Opinion Evidence

The State Agency's medical consultants determined that Plaintiff was capable of performing sedentary work activities. R. 84. This determination was based on a finding that some of Plaintiff's conditions were not severe enough to keep her from working and the severity of the symptoms were not entirely consistent with the total medical and non-medical evidence. R. 79, 85. Specifically, in November 2014, Dr. Nancy Heiser determined that plaintiff was moderately limited to complete a normal workday, although she would have some limitations due to anxiety and depression. R. 83. Further, Dr. Walter Goo concluded that she also could stand for 2 hours and sit for 6 hours, and had the capacity to lift 10 pounds occasionally. R. 81. In June 2015, Drs. Robert McGuffin and Dr. Howard Leizer stated that even though Plaintiff had some limitations to perform work, those limitations were not severe enough to keep from working and thus she could adjust to other work or maintain a simple routine. R. 100, 102. The medical consultants found that the records do not indicate a diagnosis of fibromyalgia despite Plaintiff's report that such a diagnosis had been made, she has mild elevations in liver function, her dizziness was attributed to orthostatic hypotension, the echocardiogram was negative, she has been diagnosed with IBS, not inflammatory bowel disease, and she has normal gait and normal

range of motion. R. 81. The medical consultants also determined that Plaintiff's ability to carry out short and simple instructions were not significantly limited and can carry such instructions on a regular basis without unreasonable accommodations, and is moderately limited to maintain attention and concentration for extended periods. R. 82-83. Plaintiff was also found to have mild restrictions on daily living and moderate difficulty in maintaining social functioning. R. 78. Based on these findings, the medical consultants found that Plaintiff was not disabled. R. 85.

**D.      Administrative Hearing Testimony**

On March 24, 2017, Plaintiff testified before an ALJ. R. 16. Plaintiff has a law degree from Georgetown University, a Master's in public health from George Mason University, a certificate in epidemiology, and a Bachelor's degree in mathematics. R. 24-25. Plaintiff received her law degree in 2004, where she attended Georgetown Law School at night and worked at a patent firm during the day. R. 32. In September 2013, Plaintiff worked as a grocery store cashier and alleged disability beginning on November 2013. R. 25. Prior to September 2013, Plaintiff worked as a store representative for Wegmans and was a store clerk from June 2012 to January 2013. R. 25-26. From May 2012 to June 2012, Plaintiff worked as a sales clerk at a retail store. R. 27. From 1997 to 2009, Plaintiff worked at a patent law firm. R. 26.

In March 2015, Plaintiff applied to the O'Neil Center summer program at Georgetown University. R. 27. She was accepted into the program, but did not attend because she was "too ill," "too weak," and "too dizzy." R. 27-28. Plaintiff also completed an orientation to volunteer at Guest House, but did not complete the volunteer work because she was "sleeping all the time . . . ." R. 28.

Plaintiff lives alone, R. 42, in an apartment with three floors and no elevator in Arlington, Virginia. R. 29. She has been living in that unit since 2013. R. 29. Plaintiff is able to climb the

stairs to her apartment, which consists of twelve or fourteen steps, but cannot do so without stopping on the halfway landing to rest before proceeding. R. 29-30. Plaintiff is able to do laundry, vacuum, sweep, and take her trash out. R. 43-44.

Plaintiff has a driver's license and has access to a car. R. 30. She testified that she does not use her car unless it is necessary. R. 30. Although Plaintiff's mother brings her groceries, Plaintiff is able to drive two blocks to Giant to buy groceries. R. 30. During law school, Plaintiff was able to drive herself. R. 33. Now, she is not able to drive more than a "mile or two." R. 30. Plaintiff's parents are her source of income. R. 31. She takes a taxi to visit her parents who live in a continuing care facility. R. 42.

In terms of social interaction, Plaintiff has a friend in Baltimore that she does not see but communicates with her through social media, text, or email. R. 31. She also had a boyfriend whom she parted ways with in November 2016. R. 31. She used to go out with her boyfriend when he visited from Oklahoma. R. 56. Plaintiff testified that she is able to "put on a face . . . a brave face, and talk to anybody," but has difficulties forming close relationships. R. 41. In 2013, Plaintiff went on a cruise with her mother. R. 37. During the summer of 2016, Plaintiff went to dinner with her mother in Baltimore after she saw a specialist at the University of Maryland. R. 56. In December 2014 and 2016, Plaintiff went to Christmas eve church service with her mother. R. 57.

During law school, while working at the patent law firm, Plaintiff weighed one hundred (100) pounds and was slightly fatigued. R. 33. Now, Plaintiff testified that all she can do is "get up," "eat lunch," and "go back to sleep." R. 33. In 2014, Plaintiff told her doctor that she is able to walk a couple of blocks two to three times a day. R. 34. She testified that she was walking because her doctors encouraged her to walk to reduce inflammation and boost her mood. R. 34.

Since this time, Plaintiff testified that she has deteriorated. R. 34. In November 2014, Plaintiff was able to do high intensity exercises, such as the elliptical or treadmill, for thirty-five minutes a day. R. 34-35. In September 2015, Plaintiff was able to walk three blocks, but cannot walk that far now. R. 36. Now, she can only walk two blocks and then will have to sleep for two or three hours. R. 36. In order to increase her blood pressure, Plaintiff consumes a high amount of salt and takes salt pills. R. 36. Plaintiff testified that she feels like the medications help "[t]o the extent they can." R. 37. In April 2016, Plaintiff was able to sit in front of a computer for a longer period of time than now. R. 39.

When asked how many pounds Plaintiff is able to lift, Plaintiff replied that she could lift ten pounds at the most. R. 40. Plaintiff stated that she can stand for about ten to fifteen minutes before she has to sit down. R. 40. Plaintiff has no trouble lifting things over her head but does not have muscle spasms in her hands and fingers. R. 40. Plaintiff also testified that she currently has trouble with her balance and is "dizzy all the time." R. 40.

Plaintiff testified that she has trouble remembering. R. 41. When asked what symptom is most likely to prevent her from obtaining and maintaining a job, Plaintiff testified that the fatigue and orthostatic hypotension prevent her from being able to work. R. 41. Plaintiff testified that she cannot perform a sit-down job with simple work because of her brain fog, trembles, and coordination. R. 42.

Plaintiff then described her typical day. R. 44. She does not wake up until 12 or 1 p.m. and forces herself to take a shower and eat. R. 44. She then brushes her teeth and goes back to bed. R. 44. She then sets her alarm for 7 or 8 p.m. to eat dinner and then goes back to bed. R. 45.

On examination by her attorney, Plaintiff testified that she has been seeing her psychiatrist Martin Book since 2013. R. 53. Doctor Book prescribed her medication for

8

depression, anxiety, and obsessive-compulsive disorder. R. 53. She testified that Dr. Book stated

that she was not capable of working because of her severe anxiety and depression, increasing

problems with brain fog, and random muscle spasms. R. 54.

A vocational expert ("VE"), Adina Levitan, also testified at the hearing. R. 58-66. The

ALJ posed two hypotheticals for the VE to answer. R. 59-62. The ALJ's hypotheticals assumed

an individual of the same age, education, and work experience and limited to light work as

Plaintiff. R. 59. For the first hypothetical, the ALJ instructed the VE to assume an individual who

can: occasionally climb ramps and stairs, balance, stop, kneel, crouch, and crawl; never climb

ladders, ropes, and scaffolds; avoid concentrated exposure to extreme cold, extreme heat,

wetness, excessive vibration, hazardous moving machinery and unexpected heights; perform

simple routine and repetitive tasks in a low stress work environment with no product quotas; and

interact with the public, co-workers, and supervisors. R. 60. The VE testified that an individual

with these limitations could not perform Plaintiff's past work. R. 60. However, the VE testified

that there were other jobs in the national economy that an individual could perform: inspector,

router, and mail clerk not in the post office. R. 60.

For the second hypothetical, the ALJ instructed the VE to assume the same postural,

environmental, and mental limitations as the first hypothetical, but limited to sedentary work. R.

60-61. The VE testified that there were jobs in the national economy that the individual could

perform: addresser, order clerk for food and beverage, and taper for printer circuit boards. R. 61.

Plaintiff's counsel then posed four hypotheticals to the VE. R. 63-66. For the first

hypothetical, Plaintiff's counsel asked the VE to assume the same age, education, and work

experience as the ALJ's first hypothetical, but also consider that the individual has unscheduled

absenteeism at least three days per month. R. 63. The VE testified that the individual would not

be able to maintain competitive employment. R. 63.

Plaintiff's counsel's second hypothetical again assumed the same age, education, and work experience as the ALJ's first hypothetical, but also considered that the individual cannot consistently understand, remember, and carry out simple job instructions. R. 64. The individual could do this for two-thirds of the day but could not do this for one-third of the day. R. 64. The VE testified that the individual would not be employable. R. 64.

Plaintiff's counsel's third hypothetical again assumed the same age, education, and work experience as the ALJ's first hypothetical, but also considered that the individual would exhibit behavioral extremes one third of the time and fail to appropriately respond to instructions or criticism from a supervisor. R. 64-65. The VE testified that the individual would not be able to maintain employment. R. 65.

Finally, Plaintiff's counsel's fourth hypothetical assumed same age, education, and work experience as the ALJ's first hypothetical, but also considered the need for extra breaks. R. 65. The VE testified that there would be no work with additional breaks. R. 65-66.

### III.     STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, this Court is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is more than a mere scintilla but less than a preponderance of the evidence. *Craig*, 76 F.3d at 589. An ALJ is required to

analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). In reviewing the record for substantial evidence, the court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). If the ALJ's determination is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the district court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The Commissioner's factual findings, if supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390.

The Fourth Circuit applies a harmless error analysis in the context of social security disability determinations. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir.2015); *Hammond v. Colvin*, No. 1:12-CV-01177(AJT), 2013 WL 5972432, at *6 (E.D.Va. Nov. 8, 2013). The harmless error doctrine prevents a remand when the ALJ's decision is "overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" and a remand would be "a waste of time." *Williams v. Berryhill*, No. 1:17-CV-167(TCB), 2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 Fed.Appx. 65, 67 (4th Cir. 2014) (per curiam)). An ALJ's error may be deemed harmless when a court can conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant. *See Lee v. Colvin*, No. 2:16-CV-61(RJK), 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). When reviewing a decision for harmless error, a court must look at "[a]n estimation of the likelihood that the result would have been different." *See Morton-Thompson v. Colvin*, No. 3:14-CV-179(REP), 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)).

11

## IV.     ANALYSIS

### A.     Determining Disability and the Sequential Analysis

The Social Security Regulations define "disability" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To meet this definition, the claimant must have a severe impairment or impairments that make it impossible to do past relevant work or any other substantial gainful activity that exists in the national economy. *Id.*; *see Heckler v. Campbell*, 461 U.S. 458, 460 (1983). The ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine the claimant's eligibility. Specifically, the ALJ must consider whether the claimant: (1) is engaged in substantial gainful activity;[1] (2) has a severe impairment; (3) has an impairment that equals a condition contained within the Social Security Administration's official Listing of Impairments; (4) has an impairment that prevents past relevant work;[2] and (5) has an impairment that prevents her from any substantial gainful employment. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). After step three of the analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 416.920(e)–(f), 416.945(a)(1). *Morris v. Berryhill*, No. 3:16-CV-587(MHL), 2017 WL 4112365, at *6 (E.D. Va. Aug. 30, 2017), *report and recommendation adopted*, 2017 WL

---

[1] Substantial gainful activity ("SGA") is work that is both substantial and gainful as defined by the Agency in the Code of Federal Regulations. Substantial work activity "involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks, hobbies, therapy, school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).
[2] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 404.1560(b), 404.1565(a).

4108939 (E.D. Va. Sept. 15, 2017).

**B.      ALJ's Findings**

In accordance with the five-step sequential analysis, the ALJ made the following findings

of fact and conclusions of law. At step one, the ALJ found that Plaintiff has not engaged in

substantial gainful activity since November 7, 2013, the alleged onset date. R. 110. At step two,

the ALJ found that Plaintiff suffered from the following severe impairments: anorexia nervosa,

orthostatic hypotension, Lyme disease, major depression, obsessive compulsive disorder, anxiety

disorder, and cognitive impairment. R. 110. At step three, the ALJ determined that none of the

impairments or combination of impairments met or medically equaled the severity of one of the

listed impairments in 20 C.F.R. § 404, Subpart P, App. 1. R. 113. At step four, the ALJ found

that Plaintiff has the RFC to perform sedentary work but is unable to perform any past relevant

work. R. 113, 117. At step five, the ALJ determined that Plaintiff had the RFC to:

> [O]ccasionally climb ramps and stairs, balance, stop, kneel, crouch, and crawl;
> she can never climb ladders, ropes, or scaffolds; she needs to avoid concentrated
> exposure to extreme cold, extreme heat, wetness, excessive vibration, hazardous
> moving machinery, and unprotected heights; she can only perform simple,
> routine, and repetitive tasks in a low stress working environment (no strict
> production quotas), and occasional interaction with the public, coworkers, and
> supervisors.

R. 113. Therefore, the ALJ determined that Plaintiff is capable of making a successful

adjustment to other work that exists in significant numbers in the national economy and was not

disabled under the Act. R. 118-19.

**C.      Cross-Motions for Summary Judgment**

Plaintiff claims that the ALJ failed to properly evaluate whether Plaintiff's impairments

met or equaled Listing 5.08. Plf.'s Brief in Support of Mot. for Summ. J., ECF No. 14.

Specifically, Plaintiff argues that the ALJ did not consult other evidence that her low weight was

due to a digestive disorder and not anorexia. *Id.* According to Plaintiff, the ALJ's failure to discuss whether Listing 5.08 was equaled constitutes reversible error. *Id.* Plaintiff's second argument is that the ALJ failed to evaluate the opinions of the treating sources of the record. *Id.* Plaintiff alleges that the ALJ incorrectly discredited the findings of multiple treating source doctors in order to formulate a less restrictive RFC. *Id.*

### 1. Applicable Law

In reviewing the Commissioner's decision to deny benefits, this Court must determine whether the ALJ's decision was supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). An ALJ is required to analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). "Unless [an ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits," a reviewing court cannot find that the ALJ's decision is supported by substantial evidence. *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977).

As previously discussed, this Court reviews an ALJ's disability determination in social security cases using a harmless error analysis. *See Mascio*, 780 F.3d at 639; *Hammond*, 2013 WL 5972432, at *6. An ALJ commits harmful error when he fails to discuss all of the relevant evidence. *See Morton-Thompson*, 2015 WL 5561210, at *7; *James v. Colvin*, No. 3:13-CV-547(JRS), 2014 WL 4630598, at *17 (E.D. Va. Sept. 11, 2014). For example, in *Morton-Thompson*, the ALJ determined that the plaintiff's RFC included the ability to perform a full range of sedentary work. *Morton-Thompson*, 2015 WL 5561210, at *7. However, the ALJ failed to discuss the plaintiff's ability to walk or stand for a full work day, and the definition of "sedentary work" includes a certain amount of walking and standing. *Id.* This Court remanded

the case because it found that the ALJ's failure to explicitly discuss the plaintiff's abilities to walk or stand was harmful error. *Id.* This Court reasoned that the evidence the ALJ failed to discuss "may have changed the ALJ's determination of the [p]laintiff's RFC." *Id.* Therefore, an ALJ must discuss relevant evidence for the ALJ's decision to be supported by substantial evidence. *Morton-Thompson*, 2015 WL 5561210, at *7.

### a. Evaluation of Error 1

Plaintiff first claims that the ALJ failed to evaluate whether Plaintiff's impairments met or equaled Listing 5.08. Plaintiff argues that the ALJ did not consult other evidence when he concluded that the only reason Plaintiff did not meet the Listing was because her low weight was due to her anorexia and not due to her digestive disorder. The ALJ, Plaintiff contends, failed to consider whether Plaintiff's conditions equaled Listing 5.08 and a minimal discussion of whether Listing 5.08 was equaled should have occurred since Plaintiff's body mass index was consistently below 17.50. Defendant argues that the ALJ conducted a proper inquiry of whether Plaintiff satisfied Listing 5.08 because he evaluated the opinions of Drs. Goo and McGuffin and the state agency doctor. Defendant points to the ALJ's discussion of whether Plaintiff's anorexia caused her to be disabled when he analyzed her RFC, he cited evidence that her healthcare providers noted she was well nourished, and she could perform physical activities despite her low weight. In reviewing the records, the Court finds that the results of Plaintiff's 2017 exam show that there was a normal intestinal pattern with "no evidence of gastric," mild fibrosis, unremarkable esophageal mucosa, and no evidence of eosinophilic esophagitis nor evidence of celiac disease. R. 1150. The ALJ cites to this exhibit, Exhibit 14F, as well as other medical records to reach his conclusion. The Court agrees that the ALJ sufficiently evaluated whether Plaintiff's anorexia did not meet or equal Listing 5.08.

The determination of whether a claimant meets or equals an impairment described in the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1, is made at step three of the disability determination process. 20 C.F.R. § 416.920(a)(4)(iii). During this step, the ALJ has the responsibility to decide whether "medical equivalence" has been established. *Id.* § 416.926(e). Medical equivalence is determined in three ways: (1) if an individual exhibits all of the findings in a Listing, but one or more of those findings is not as severe as specified in the particular listing, then an impairment is medically equivalent to the Listing if other findings related to the impairment are of equal medical significance to the required criteria; (2) if an impairment is not described, then the findings are compared with those for closely analogous listed impairments; and (3) if a combination of impairments does not meet a Listing, then the findings are compared with those for closely analogous to listed impairments. 20 C.F.R. § 404.1526(b). To establish equivalency, a claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley,* 493 U.S. 521, 531 (1990). Listing 5.08 covers "[w]eight loss due to any persisting gastrointestinal disorder." 20 C.F.R. § 404, Subpart P, App. 1, 5.08. Therefore, to equal Listing 5.08, a claimant's low weight must be as severe as the listing requirement and must be due to an impairment that is as severe as a gastrointestinal disorder. In this case, the Court finds that the ALJ discussed whether Plaintiff's impairments were as severe as Listing 5.08.

The ALJ's decision discusses whether Listing 5.08 was equaled, albeit not in the most obvious way. First, the ALJ's disputed statement appears below a heading declaring that "[t]he claimant does not have an impairment or combination of impairments that medically equals the severity of Listing 5.08." R. 112. The ALJ discussed the unremarkable results of a colonoscopy and MR enteropathy, which signals to the Court that the ALJ found that anorexia nervosa was

16

not medically equaled to a digestive disorder. If there was no evidence of a digestive impairment, then the ALJ could not conclude that Plaintiff's weight loss was as severe as Listing 5.08. Second, the ALJ discussed whether Plaintiff's anorexia nervosa was disabling to determine the severity of it. Plaintiff appears to contend that her anorexia should medically equal Listing 5.08 because her body mass index has been consistently below 17.50. The ALJ did not find her weight disabling because it had been stable or increased. R. 114-15. The ALJ also noted that her records indicated that she was well nourished, and she was able to work during the day and attend law school at night, which did not preclude her from work. R. 115. Based on these findings, the ALJ based his conclusion that Plaintiff's weight was not disabling on substantial evidence.

Further, during the administrative hearing, the ALJ asked Plaintiff's counsel to comment on the state agency doctor's conclusion that her low weight was caused by anorexia and not by a digestive impairment and the fact that he did not make an equivalency finding. R. 68-69. Again, this indicates that the ALJ was considering and did consider whether Plaintiff's impairments medically equaled Listing 5.08.  When viewing the ALJ's decision as a whole, where some of the discussion is not in the appropriate heading, the Court nevertheless finds that the ALJ discussed whether Plaintiff's impairment medically equaled Listing 5.08. Although such a discussion was not made in an obvious manner, there is substantial evidence supporting the ALJ's conclusion that Plaintiff's impairment does not equal the severity of Listing 5.08. The decision in its entirety demonstrates that the ALJ considered whether Plaintiff's impairment medically equaled Listing 5.08.

### b. Evaluation of Error 2

Plaintiff's second claim argues that the ALJ failed to properly evaluate the opinions of the treating sources of record. Plaintiff alleges that the ALJ discredited the findings of multiple treating source doctors—Drs. Book and Furlong—in order to formulate a less restrictive RFC, which was a violation of the treating physician rule. Defendant argues that the ALJ thoroughly reviewed the medical opinion evidence and properly evaluated Plaintiff's RFC.

An ALJ is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). If a treating source's medical opinion is not given controlling weight, other factors, such as the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship and supportability, are applied to determine the weight to give the medical opinion. *Id.* The ALJ must provide a good reason in its decision regarding the weight given to a treating source's medical opinion. *Id.* The ALJ discredited treating physician Book because his treatment records are not "consistent with or supported by his treatment records." R. 117. The ALJ discredited treating physician Furlong because he had a limited treatment relationship and his opinions were inconsistent with the objective medical evidence. R. 117. The Court finds that the ALJ properly explained the weight afforded to treating physicians Book and Furlong.

The ALJ's decision to discredit Drs. Book's and Furlong's opinion is proper because it is not perfunctory. *See Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017). The ALJ's decision to discredit Dr. Book's opinion is based on supportability and consistency, factors outlined in § 404.1527(c)(3)-(4). The ALJ found it notable that Dr. Book had not performed a mental status examination on Plaintiff since December 2013 and that records indicate that medications were effective. Though Plaintiff is correct in arguing that Dr. Book's findings are not less valuable merely because his notes do not contain the phrase "mental status examination," this argument is

not grounds for remand. The ALJ also found that the medications were effective. A treating source's opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and cannot be inconsistent with the other substantial evidence in the case record. § 404.1527(c)(2). Dr. Book opined in May 2016 that Plaintiff was not able to adjust to job activities because of chronic fatigue and cognitive impairment. R. 1142-43. However, in 2015 Dr. Book opined that Plaintiff's impairments were sufficiently severe enough to interfere with her ability to carry out work activities. R. 1139-40. In that same opinion, Dr. Book references observations of the Plaintiff from 2013 and 2014. The only 2015 observations Dr. Book makes of the Plaintiff in that same report are that she had ongoing complaints of depression and fatigue even though she was continuing to use Prozac and Diazepam, and that she had lost a bit of weight but had gained some back in the last weeks. R. 1140. The Court finds that his 2015 opinion aligns with the earlier opinions of Drs. Leizer, Heiser, Goo, and McGuffin, where they concluded that Plaintiff had some limitations in her ability to work but the limitations were not severe enough to keep her from working. R. 83, 85, 99, 102.   Therefore, the ALJ concluded that Dr. Book's opinion was not consistent or supported by the record in accordance with § 404.1527(c) and did not err in doing so.

With regard to Dr. Furlong's opinion, the Court also finds that the ALJ did not err when discrediting this opinion evidence. The ALJ gave minimal weight to Dr. Furlong's opinion because it was a limited treatment relationship and his opinions were inconsistent with the objective medical evidence and Plaintiff's reported activities. R. 117. The Court finds no error in this decision because the "the longer a treating source has treated [a plaintiff] and the more times [a plaintiff] has been seen by a treating source, the more weight [is given] to the source's medical opinion." § 404.1527(c)(2)(i). Here, the ALJ found that Dr. Furlong treated Plaintiff on a

monthly basis for three months, which was insufficient for the extreme limitations that Plaintiff complained of. The ALJ can rely on the opinion of non-examining medical consultants even when those opinions contradict the opinions of a treating physician as long as the non-examining doctor's opinions are consistent with the record. *See Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir. 1971). This is exactly what the ALJ did here.

The Court finds no error in the ALJ's reliance of non-examining medical consultants instead of Dr. Furlong's opinion because the opinions of the non-examining medical consultants are consistent with the record. For example, the ALJ dismissed Dr. Furlong's opinion that Plaintiff was precluded from sedentary work because Plaintiff's own testimony indicated that she was able to drive or take a cab to visit her parents, exercise on the treadmill or elliptical, do yoga, work on the computer, and walk a few blocks. R. 14, 30, 34, 36, 42-44, 115. The objective medical evidence that the ALJ relied on also contradicts Dr. Furlong's opinion that Plaintiff was precluded from sedentary work. Rather, the objective medical evidence indicated that her gait and station are normal, her extremities are within normal limits, her symptoms of headaches, decreased energy, cognitive impairment, and dizziness improved with salt supplementation, and her mental impairment symptoms improved with Prozac. R. 115-16. The ALJ found that the objective medical evidence limited her to sedentary work. R. 115. Therefore, in relying on the objective medical evidence and Plaintiff's testimony, *i.e.*, the whole record, the ALJ properly accorded less weight to Dr. Furlong's opinion and provided good reasons for doing so.

Accordingly, the undersigned finds that the ALJ did not err when he evaluated the opinions of the treating sources of record. He properly evaluated Drs. Book's and Furlong opinion against the record and provided good reasons, in accordance with § 404.1527(c), for discrediting their opinion.

V.        **RECOMMENDATION**

For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED.

VI.        **NOTICE**

By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

October 18, 2019                                    /s/
Alexandria, Virginia                    Ivan D. Davis
                                        United States Magistrate Judge